**NOT RECOMMENDED FOR PUBLICATION**

**File Name: 20a0596n.06**

**No. 20-5003**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|     Plaintiff-Appellee, | ) | Oct 20, 2020 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JOHN BROWN, | ) | COURT FOR THE WESTERN |
|     Defendant-Appellant. | ) | DISTRICT OF TENNESSEE |
| | ) | |

_____

**BEFORE:** BOGGS, STRANCH, and THAPAR, Circuit Judges.

**BOGGS, Circuit Judge**. John Brown had been on parole in Tennessee since December 2016 for voluntary manslaughter. As a condition of his parole, Brown signed a Parole Certificate that provided in pertinent part, "I agree to a search, without a warrant, of my person, vehicle, property, or place of residence by any Probation/Parole officer or law enforcement officer, at any time without reasonable suspicion." Brown was scheduled to report to the parole office every three months, but he only reported once in January 2017. Brown's parole was set to expire May 20, 2018, and Brown missed his last compliance meeting with his parole officer, Terry Smith, scheduled for May 9, 2018.

On May 15, 2018, Sergeant Mark Lesure of the Memphis Police Department's Homicide Investigation Unit ("MPD") contacted Officer Smith, informing him that Brown was a person of interest in a May 6, 2018 shooting homicide. Officer Smith rescheduled Brown's compliance

1

check for the next day, May 16, 2018, and informed the MPD of the same. Brown again did not appear.

The next day, Brown did appear at the parole office without an appointment. Officer Smith reported this to his superior, Officer Myron Massey, a lead officer at the State of Tennessee Department of Corrections Parole and Probation. Officer Massey was part of the Memphis City Task Force that coordinated with other Memphis law enforcement agencies in an effort to identify violent offenders and those likely to be involved in gang activity. Officer Massey alerted the MPD of Brown's unexpected presence at the parole office.

MPD officers deployed to the parole office and, when they arrived, immediately detained Brown. They conducted a pat-down search and recovered Brown's wallet and his vehicle-key fob. MPD officers gave the fob to Officer Massey, who asked Brown the location of his vehicle. Brown replied that the police needed a search warrant, at which time Officer Massey told Brown that due to his status as a parolee, his vehicle and person were subject to searches without a warrant.

Officer Massey proceeded to locate Brown's car and began to search it. Upon opening the driver-side front door, Officer Massey saw an extended magazine of a gun protruding from underneath the driver's seat. Officer Massey immediately stopped his search, closed the vehicle door, and alerted MPD, which took over the investigation.

Sgt. Lesure arrived on scene shortly thereafter and decided to obtain a search warrant for the vehicle before proceeding any further with the search. MPD transported Brown to the police station, where Sgt. Lesure read him his *Miranda* rights. Brown signed an advice of rights form, waived his *Miranda* rights, and signed a typed statement where he admitted being in possession of the gun found in his vehicle. The next day, MPD received the search warrant and searched Brown's vehicle, finding a Smith & Wesson .40-caliber pistol under the driver's seat.

Brown was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). He pled not guilty and filed a pretrial motion to suppress the firearm and his statement affirming that he possessed the firearm. The district court denied the motion to suppress on grounds that, because Brown was a parolee, the standard Fourth Amendment rights regarding search and seizure did not apply. Brown entered a conditional guilty plea, reserving his right to appeal the district court's denial of his motion to suppress. The district court entered judgment on December 12, 2019. Brown then timely filed this appeal

## I. Standard of Review

In reviewing a district court's suppression determination, we review factual findings for clear error and conclusions of law de novo. *United States v. Jackson*, 682 F.3d 448, 452 (6th Cir. 2012). We "must afford due weight to the factual inferences and credibility determinations" made by the district court. *United States v. Moon*, 513, F.3d 527, 536 (6th Cir. 2008). To overturn a district court's denial of a motion to suppress, the defendant must show a violation of a constitutional or statutory right sufficient to justify suppression. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (citation omitted). We may affirm a denial of a motion to suppress on any basis supported by the record. *United States v. Gill*, 685 F.3d 606, 609 (6th Cir. 2012).

## II. Warrantless Search of Parolees

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. This fundamental right is preserved by the requirement that searches be conducted pursuant to a warrant based on probable cause. *Payton v. New York*, 445, U.S. 573, 586 (1980). But there are "exceptions to the general rule that a warrant must be secured before a search is undertaken."

*California v. Carney*, 471 U.S. 386, 390 (1985). Whether a search by law enforcement is constitutional is evaluated on its reasonableness, which "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. 648, 667-68 (1979).

In 1987, the Supreme Court held that a State's operation of a probation system creates "special needs" "beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987). The Court reasoned that, "probation serves as a period of genuine rehabilitation" and reduces the chances of recidivism, creating a "special need" that allows warrantless searches by the State in administering its probation system. 483 U.S. at 875; *see United States v. Sweeney*, 891 F.3d 232, 236 (6th Cir. 2018).

In 2001, the Supreme Court moved away from the "special needs" doctrine and upheld the search of a probationer's residence based on only reasonable suspicion arising from the totality of the circumstances of the search, which included the probationer's acceptance of a search condition under the terms of his probation. *United States v. Knights*, 534 U.S. 112, 122 (2001); *see also United States v. Tessier*, 814 F.3d 432, 433 (6th Cir. 2016) (applying *Knights* balancing test under the totality of the circumstances to uphold the search of a residence that was conducted without reasonable suspicion).

In 2003, the Court went further, upholding a warrantless and suspicionless search by a law-enforcement officer who stopped a parolee whom he thought had an outstanding warrant. *Samson v. California*, 547 U.S. 843 (2006). The parolee, Samson, informed the officer that he had no outstanding warrants, which the officer then confirmed by radio dispatch. Nonetheless, the officer conducted a suspicionless search, pursuant to Cal. Penal Code § 3067 (a), based solely on

Samson's status as a parolee. 547 U.S. at 846-47. The officer found methamphetamine and Samson was convicted for possession and sentenced to seven years of imprisonment. *Id*. at 847.

The pertinent California parole statute in *Samson* provided that every prisoner eligible for parole "shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." Cal. Penal Code § 3067(a) (2000); *Samson*, 547 U.S. at 846. The Supreme Court held that under "the totality of the circumstances . . . including the plain terms of the parole search condition," Samson, as a parolee, "did not have an expectation of privacy that society would recognize as legitimate." *Samson*, 547 U.S. at 852. In so holding, the Court noted, as a favorable factor, California's statutory prohibition on parolee searches that were "arbitrary, capricious or harassing." *Id. at* 856.

### III. Analysis

The question here is whether Brown's Fourth Amendment right against unreasonable search and seizure was violated when law-enforcement officers, based on a tip from Brown's parole officers, searched Brown without a warrant because he was "a person of interest" in a homicide. Brown argues that the "stalking horse" caveat to the general rule of the cases above applies here. That caveat provides that the "special needs" exception to the warrant requirement does "not permit a probation officer to act as a 'stalking horse' to help the police evade" that requirement; while "probation officers [can] cooperate with police to achieve joint objectives," they cannot "use their authority to eliminate the warrant requirement for police investigations" altogether. *United States v. Ickes*, 922 F.3d 708, 711 (6th Cir. 2019); *see also United States v. Martin*, 25 F.3d 293, 296 (6th Cir. 1994) ("[I]t is impermissible for a probation search to serve as subterfuge for a criminal investigation.") After the Supreme Court's decision in *Knights*, though,

this court and several other circuits began to question the continued existence of the "stalking-horse" caveat. *Ickes*, 922 F.3d at 711–12 (collecting cases). And in 2018, we held that the "stalking-horse" exception "does not apply when a *parolee* is subject to a search provision and the search is reasonable under the totality of the circumstances." *Id*. at 712 (citing *Sweeney*, 891 F.3d at 237). In fact, in discussing why the stalking-horse caveat did not apply in that case, the *Ickes* court prefaced its analysis by noting that it was looking at the caveat even "if it survives *Knights* at all." *Ibid.*

The district court, applying *Samson*, denied Brown's motion to suppress based on the totality of the circumstances and the terms and conditions of the Parole Certificate signed by Brown. It held "that this parole certificate is an example where reasonable suspicion is not required [for a search] because the State of Tennessee included that as part of its conditions for the alternative to incarceration."

*Samson* and *Sweeney* control this case, not *Griffin*. The terms and conditions of the search provision at issue in *Samson* were written pursuant to a specific California statute. *See Samson*, 547 U.S. at 846. While Tennessee does not have a similar statute, its statutory scheme provides that the Tennessee Board of Probation and Parole "[i]n granting parole . . . may impose any conditions and limitations that [it] deems necessary." Tenn. Code § 40-28-116(b). Interpreting that provision, the Tennessee Supreme Court upheld the warrantless search of a parolee's residence pursuant to the terms and conditions of her parole. "[P]arolees who are subject to a warrantless search condition may be searched without reasonable or individualized suspicion" as long as the search is not conducted in "an unreasonable manner." *State v. Turner*, 297 S.W.3d 155, 157 (Tenn. 2009). The court concluded: "[w]e therefore adopt the reasoning of *Samson* and hold that the Tennessee Constitution permits a parolee to be searched without any reasonable or individualized

suspicion where the parolee has agreed to warrantless searches by law enforcement officers." *Id.* at 166. The holding in *Turner* applies to the terms and conditions of parole at issue here.

Brown agreed to specific search conditions as set forth by the terms of his parole. Those terms provide that law-enforcement officers can search Brown even without "reasonable suspicion." Brown signed and agreed to these terms to obtain parole. Officers searched Brown because he was a parolee and "a person of interest" in a homicide. In *Samson*, the Supreme Court upheld a search of a parolee solely based on his status as a parolee. 547 U.S. at 852. Here, law-enforcement officers had not one, but two, reasons to search Brown: the terms and conditions of his parole *and* his status as a person of interest in a homicide investigation. *See Sweeney*, 891 F.3d at 237. Further, Brown does not argue on appeal, nor is there any evidence, that the search was arbitrary, capricious, or harassing. The district court did not err in denying the motion to suppress.

## IV. Conclusion

For the reasons set forth above, we AFFIRM the district court.