IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2021

**STATE OF TENNESSEE v. MICHAEL RAY HOGAN**

**Appeal from the Criminal Court for Sullivan County**
**No. S64,601     James F. Goodwin, Jr., Judge**

_____

**No. E2020-01496-CCA-R3-CD**
_____

The Defendant, Michael Ray Hogan, appeals as of right from the Sullivan County Criminal Court's revocation of his probation and reinstatement of the remainder of his four-year sentence based upon his committing new offenses, failing to report his arrests to his probation officer, and for failing to report to his probation officer. The Defendant contends that the trial court abused its discretion by: (1) finding that the Defendant violated his probation because the firearm and suspected marijuana were seized in violation of his Fourth Amendment rights; (2) considering proof that occurred after the violation warrant was filed; (3) and requiring the Defendant to serve the balance of his sentence in custody. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JILL BARTEE AYERS, JJ., joined.

Lesley A. Tiller, Blountville, Tennessee, for the appellant, Michael Ray Hogan.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Barry Staubus, District Attorney General; and Tara Nelson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 7, 2018, the Defendant pled guilty to attempted aggravated robbery and was sentenced to four years on supervised probation. See Tenn. Code Ann. § 39-13-402.

On January 24, 2020, the Department of Corrections issued a warrant alleging that the Defendant violated his terms of probation. According to the warrant, the Defendant committed the offenses of possession of a firearm by a convicted felon and possession of marijuana; failed to report new arrests; changed his residence without permission; failed to report to his probation officer since November 13, 2019; failed to perform court-ordered community service; and engaged in assaultive, abusing, threatening, or intimidating behavior.

A probation revocation hearing was held on October 7, 2020. At the hearing, Bristol Police Department Officer Maurice Harris testified that on November 8, 2019, he became aware that an arrest warrant had been filed for the Defendant. The warrant alleged that the Defendant had committed a breaking and entering in Virginia. He testified that a breaking and entering involved the entering of a habitation of another and some sort of assault or theft therein.

Officer Harris knew that the Defendant was employed at a local Popeye's, so he proceeded to that location. Upon arriving at Popeye's, he encountered the Defendant. When he informed the Defendant of the active warrant, the Defendant "began to get loud," and Officer Harris placed him under arrest. While being placed in the patrol vehicle, the Defendant called "someone else and [] asked him to get [the Defendant's] property." During transportation, the Defendant "continued to be loud, screaming and yelling, kicking [the vehicle's] windows." Officer Harris testified that although the Defendant did not want him to return to Popeye's to retrieve the Defendant's property, protocol was to take one's property upon arrest and take the property to the jail. The Defendant was taken to the Bristol Virginia Sheriff's Office.

Officer Harris returned to Popeye's and asked the manager to pinpoint the Defendant's property. He looked at the contents of the Defendant's backpack and transported the property to the Sheriff's Office. Officer Harris once again returned to Popeye's to review video surveillance footage to identify the Defendant's backpack and jacket. He was also able to verify that the property had not been moved or disturbed from the time that the Defendant arrived at work to the time that Officer Harris retrieved the property. Officer Harris took the backpack and jacket to the Bristol Virginia Sheriff's Office and the contents were inventoried.

Officer Harris observed cigars, a handgun, and "a clear plastic bag with a large amount of green leafy [substance] consistent" with marijuana in the Defendant's backpack. He testified that he had received training in identifying illegal narcotics, specifically marijuana, and had observed marijuana in "quite a few" arrests. Officer Harris also found the Defendant's "face shot [photograph] along with his social security number and identification numbers that he had received from jail."

During the arrest and upon arrival to the jail, the Defendant made numerous threats to Officer Harris, including a statement that the Defendant "wished [Officer Harris'] little girls slept good" that evening. Officer Harris asserted that the Defendant lived only two blocks from his house.

Tennessee Department of Corrections Probation Officer David Francis testified that he was assigned to supervise the Defendant and that he had filed the probation violation warrant. Officer Francis' last interaction with the Defendant was on November 13, 2019. According to Officer Francis, the Defendant was scheduled to report twice in December 2019, but he failed to do so. Officer Francis was notified when the Defendant was taken into custody in Bristol, Virginia.

Officer Francis testified that as a condition of his probation, the Defendant could be subjected to a search of his person or property at any time. At the time of the hearing, the Defendant had failed to complete any of his community service or pay court costs as conditions of his probation. Officer Francis asserted that the Defendant was "required to live on Windsor Avenue in Bristol," but he had suspected the Defendant was not living at that location. Upon receiving the arrest reports, Officer Francis was able to verify that the Defendant's home address was listed as Euclid Avenue in Bristol, Virginia. Officer Francis had not given the Defendant permission to move. The Defendant had also failed to report his arrests and charges.

In April 2020, Officer Francis received a text message from the Defendant that stated he had "bonded out" of jail. Despite Officer Francis' notifying the Defendant of an active warrant for the Defendant's arrest and advising the Defendant to immediately report to the probation office, the Defendant failed to do so. Officer Francis did not have further contact with the Defendant.

The Defendant testified that he was arrested by Officer Harris on November 8, 2019, but was released on bond the same day. The Defendant was arrested a few days later for public intoxication and evading arrest, but according to the Defendant, that case was dismissed after a trial in general sessions court. The Defendant was again arrested on November 21, 2019, at Popeye's. He testified that he remained incarcerated until April 2020 and had "strict restrictions" because of his bond conditions with the state of Virginia.

The Defendant testified that he lived on Tremont Avenue after being released on bond. Prior to being arrested, the Defendant testified that he was living on Windsor Avenue in Bristol, Tennessee. The Defendant recalled sending a text message to Officer Francis upon his release in April 2020 and testified that Officer Francis advised him to report immediately.

The Defendant had worked at Popeye's for one and a half months prior to being arrested. He had previously worked at Burger King for ninety days. The Defendant asserted that he would "complete probation" if given the chance.

The Defendant recalled Ginger Hills-Thomas testifying on his behalf at a previous bond hearing. According to the Defendant, Ms. Hills-Thomas testified that after the Defendant was released in April 2020, he lived with her on Windsor Avenue.

The trial court found Officer Harris credible and found by a preponderance of the evidence that the Defendant was a convicted felon in possession of a handgun and marijuana.[1] The court also found that the Defendant had failed to report his three arrests or his change of residence to Officer Francis. Furthermore, despite instructions from Officer Francis in April 2020, the Defendant failed to report at any time until he was arrested on June 29, 2020. Based on Officer Francis' testimony, the court found by a preponderance of the evidence that the Defendant had failed to perform any court-ordered community service. The court finally found that the Defendant engaged in threatening or intimidating behavior. The court noted that it did not consider the Defendant's failure to pay probation fees or court fine and costs. The court sentenced the Defendant to serve the remainder of his four-year sentence in custody.

## ANALYSIS

The Defendant argues that the trial court abused its discretion when it found that he violated his probation because the firearm and suspected marijuana were seized in violation of his Fourth Amendment rights, when it considered proof that occurred after the violation of probation warrant was filed, and when it ordered the Defendant to serve the remainder of his sentence in custody.

The State responds the trial court properly exercised its discretion because there was substantial evidence to prove the Defendant violated his probation and that the Fourth Amendment exclusionary rule is not applicable to probation revocation unless the evidence is obtained as a result of police harassment or in a particularly offensive manner.

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e). If the trial court revokes the probation, it has the right to "extend the

---

[1] The court made factual findings prior to the Defendant's testimony. Following the Defendant's testimony, the court made a formal ruling regarding his probation.

-4-

defendant's period of probation supervision for any period not in excess of two (2) years," "commence the execution of the judgment as originally entered," or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." Tenn. Code Ann. §§ 40-35-308(c), -35-311(e). In a probation revocation hearing, the credibility of the witnesses is determined by the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

Furthermore, the decision to revoke probation is in the sound discretion of the trial judge. State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); Mitchell, 810 S.W.2d at 735. The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, "it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Id. (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)); see also State v. Farrar, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011). Such a finding "reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case." State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. The Tennessee Constitution similarly states that "the people shall be secure in their persons . . . from unreasonable searches and seizures[.]" Tenn. Const. art. I, § 7. The search and seizure provisions of the United States Constitution and the Tennessee Constitution are "'identical in intent and purpose.'" State v. Christensen, 517 S.W.3d 60, 68 (Tenn. 2017) (quoting Sneed v. State, 423 S.W.2d 857, 860 (1968)). In reviewing the permissibility of such searches and seizures, courts should balance the individual's privacy interest against the governmental interest in conducting the searches. State v. Turner, 297 S.W.3d 155, 160 (Tenn. 2009).

Consequently, under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 454-55, (1971); State v. Bartram, 925 S.W.2d 227, 229-30 (Tenn. 1996). The exceptions to the requirement of obtaining a valid search warrant include search incident to a lawful arrest, consent to search, plain view, stop and frisk, and search under exigent circumstances. State v. Cox, 171 S.W.3d 174, 179 (Tenn. 2005) (citing State v. Bartram, 925 S.W.2d 227 (Tenn. 1996)).

Additionally, despite the general protection from unreasonable searches and seizures, such protection is lessened when the person being searched was previously convicted of a crime and is on probation or parole. State v. Turner, 297 S.W.3d 155, 160 (Tenn. 2009). A probationary status gives way to a lesser expectation of privacy and therefore weakened protections, especially where the defendant has consented to such searches as a condition of his probation. Id. at 161.

In this case, the Defendant admits that he was on probation at the time of his arrest and that he was subject to a search by a police officer at any time. Although Officer Harris did not know the Defendant was on probation at the time he executed the arrest warrant, he returned to the Popeye's to retrieve the Defendant's property after making the lawful arrest. Officer Harris reviewed the surveillance cameras to ensure that the Defendant's property had not been tampered with before taking it to the jail to be inventoried. The inventory search yielded a marijuana-like substance and a firearm. The trial court did not abuse its discretion by finding that the Defendant violated his probation by possessing a firearm and a marijuana-like substance.

The Defendant's argument that the court considered proof outside of the January 24, 2020 violation of probation warrant ultimately fails. Although the Defendant was not served with the warrant until June 29, 2020, he had already failed to report to his probation officer for over two months before the warrant was filed. This failure to report constitutes a violation of probation. The court did not abuse its discretion by finding that the Defendant failed to report.

Additionally, the court's findings that the Defendant failed to report a change of residence, that he failed to follow instructions from Officer Francis to report after he was released from custody, that he failed to perform any court-ordered community service, and that he engaged in threatening or intimidating behavior provides substantial evidence to prove that the Defendant violated his probation. It was within the court's discretion to revoke his probation based upon a multitude of violations and to order his sentence to be executed. The Defendant is not entitled to relief on this basis.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-6-