IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

**STATE OF TENNESSEE v. ANGELA CARRIE PAYTON HAMM and
DAVID LEE HAMM**

**Circuit Court for Obion County
No. CC-16-CR-15**

_____

**No. W2016-01282-CCA-R3-CD**

_____

JOHN EVERETT WILLIAMS, J., concurring.

I concur in the majority opinion, but I write separately to express my views regarding the additional issues that arise from warrantless, suspicionless searches of probationers conducted pursuant to a condition of probation.

**Totality of the Circumstances/Reasonable Suspicion**

I believe that at a minimum, reasonable suspicion is required before the State may conduct a warrantless search of a probationer who is subject to a warrantless search requirement as a condition of probation. While neither the United States Supreme Court nor the Tennessee Supreme Court have addressed whether something less than reasonable suspicion would permit searches of probationers, both courts have addressed the issue as it related to parolees. *See Samson v. California*, 547 U.S. 843 (2006); *State v. Turner*, 297 S.W.3d 155 (Tenn. 2009).

*Samson* involved a challenge by a parolee to a California law requiring every prisoner eligible for parole to "'agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause.'" 547 U.S. at 846 (quoting Cal. Penal Code Ann. § 3067). The issue before the Court was "whether a suspicionless search, conducted under the authority of this statute, violates the Constitution." *Id.* The Court held that the statute was constitutional under the Fourth Amendment. *Id.* at 857.

The Court noted that "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." *Id.* at 850. The Court further noted that "'[t]he essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner

abides by certain rules during the balance of the sentence.'" *Id.* (quoting *Morrisey v. Brewer*, 408 U.S. 471, 477 (1972)). Applying the totality of the circumstances approach, the Court concluded that searches under the California law were constitutional. *Id.* at 852. The Court stated, "Examining the totality of the circumstances pertaining to petitioner's status as a parolee, 'an established variation on imprisonment,' … including the plain terms of the parole search condition, we conclude that petitioner did not have an expectation of privacy that society would recognize as legitimate." *Id.*

The Court concluded that the State's interests were substantial, reasoning that

> a State has an "'overwhelming' interest" in supervising parolees because "parolees … are more likely to commit future criminal offenses." Similarly, this Court has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the tolerated under the Fourth Amendment.

*Id.* at 853 (quoting *Pa. Bd. of Prob. and Parole v. Scott*, 524 U.S. 357, 365 (1998)). The Court recognized that "[t]he California Legislature has concluded that, given the number of inmates the State paroles and its high recidivism rate, a requirement that searches be based on individualized suspicion would undermine the State's ability to effectively supervise parolees and protect the public from criminal acts by reoffenders," and agreed that the conclusion made "eminent sense." *Id.* at 854. The Court further reasoned that "[i]mposing a reasonable suspicion requirement … would give parolees greater opportunity to anticipate searches and conceal criminality." *Id.*

In *Turner*, the Tennessee Supreme Court held that "parolees who are subject to a warrantless search condition may be searched without reasonable or individualized suspicion." 297 S.W.3d at 157. Unlike *Sampson*, the holding was not based upon a statute that authorized warrantless searches of parolees. Rather, the parolee in *Turner* signed a document which provided that she "agree[d] to a search, without a warrant, of [her] person, vehicle, property, or place of residence by any Probation/Parole Officer or law enforcement, at any time." *Id.*

Our supreme court discussed the holding in *Sampson* that warrantless, suspicionless searches of parolees subject to a warrantless search condition did not violate the Fourth Amendment and concluded that such searches also did not violate the Tennessee Constitution. *Id.* at 162-66. The court concluded that the analysis in *Samson* "strikes the correct balance between the severely diminished privacy interests of a convicted felon serving the remainder of his or her sentence on parole release in the community, and

society's interests in both reintegrating that felon and protecting itself against recidivism." *Id.* at 165.

In examining the nature of parole, the court recognized that "[o]n the continuum of possible punishments and reductions in freedoms, parolees occupy a place between incarcerated prisoners and probationers." *Id.* at 162. The court recognized that while on parole, parolees remain under the confinement of their sentences and in the legal custody of the warden and are subject all of the conditions of their parole. *Id.* at 163 (citations omitted). The court noted that rather than a right, parole is a privilege that the State "may accord to persons incarcerated for committing serious felonies in spite of worrisome statistics of recidivism." *Id.* at 165. The court stated that "this very real danger of recidivism" must be taken into account in determining the constitutional parameters of what is "reasonable" for parolees. *Id.*

The court concluded that "[a]lthough a parolee's constitutional protections against unreasonable searches may not be extinguished as completely as those of incarcerated prisoners, parole status is a 'powerful circumstance' much more akin to incarceration than probation or freedom in determining the reasonableness of a search." *Id.* (footnotes and citations omitted). In reaching this conclusion, the court cited with approval a concurring opinion in *United States v. Crawford*, which explained that in contrast to probationers, parolees "'have been sentenced to prison for felonies and released before the end of their prison terms'" and are "'deemed to have acted more harmfully than anyone except those felons not released on parole.'" *Id.* at 165-66 (quoting *United States v. Crawford*, 372 F.3d 1048, 1077 (9th Cir. 2004) (en banc) (Kleinfeld, J., concurring)). The court held that "[a] parole condition requiring that the parolee submit to warrantless searches is reasonable in light of the parolee's significantly diminished privacy interests; the goals sought to be attained by early release; and society's legitimate interest in protecting itself against recidivism." *Id.* at 166. The court employed the totality of the circumstances approach to determine whether the search of the parolee's home was reasonable and held that a "suspicionless search of a parolee subject to a warrantless search condition, and which is conducted out of valid law enforcement concerns, is not unreasonable." *Id.* at 167. The court, however, was careful to note that its resolution of the issue of warrantless searches of parolees pursuant to a condition of parole did not require the court to resolve the issue as it related of probationers. *Id.* at 162 n.4.

There is a conflict among jurisdictions regarding the constitutionality of a warrantless search absent reasonable suspicion of a probationer who is subject to warrantless searches as a condition of probation. Some jurisdictions have held that the warrantless search of a probationer subject to a warrant search condition was constitutional even absent reasonable suspicion based on the totality of the circumstances. *See, e.g. United States v. Williams*, 650 Fed. App'x. 977, 980 (11th Cir. 2016) (holding that the

suspicionless search the home of a probationer subject to a warrantless search provision was constitutional where the search was conducted primarily by probation officers); *United States v. Tessier*, 814 F.3d 432, 434-35 (6th Cir. 2016) (upholding a warrantless search of a Tennessee probationer's residence that was not based on reasonable suspicion where the probationer was subject to a warrantless search condition and the search served a legitimate law enforcement or probationary purpose); *United States v. King*, 736 F.3d 805, 810 (9th Cir. 2013) (concluding that "a suspicionless search, conducted pursuant to a suspicionless-search condition of a violent felon's probation agreement, does not violate the Fourth Amendment"); *State v. Adair*, 383 P.3d 1132, 1135-38 (Ariz. 2016) (holding that a search of a probationer's home, conducted by probation officers pursuant to valid probation conditions, need not be supported by reasonable suspicion but declining to address the constitutionality of the same search conducted by law enforcement instead of probation officers); *State v. Vanderkolk*, 32 N.E.3d 775, 779 (Ind. 2015) (concluding that the holding in *Samson* also applies to probationers and community corrections participants).

Other jurisdictions have held that warrantless searches of probationers subject to a warrantless search condition must be supported by reasonable suspicion. *See, e.g. State v. Bennett*, 200 P.3d 455, 463 (Kan. 2009) (holding that a probationer may not be searched by a probation or law enforcement officer absent reasonable suspicion and that a condition imposed by the trial court subjecting the probationer to random, suspicionless searches was unconstitutional); *State v. Cornell*, 146 A.3d 895, 909 (Vt. 2016) (declining to extend *Sampson* to searches of probationers and holding that "reasonable suspicion for search and seizure imposed on probationers is required by the Fourth Amendment"); *see also State v. Ballard*, 874 N.W.2d 61, 62 (N.D. 2016) (concluding that the suspicionless search of the home of an unsupervised probationer who was subject to a warrantless search condition was unreasonable under the Fourth Amendment); *Murry v. Commonwealth*, 762 S.E.2d 573, 581 (Va. 2014) (concluding that a probation condition subjecting a probationer to a warrantless, suspicionless search by any probation or law enforcement officer at any time was not reasonable in light to the probationer's background, his offenses, and the surrounding circumstances).

Probationers have more limited privacy rights than those of free citizens, but probations do enjoy some expectation of privacy in their persons and property. *See Knights*, 534 U.S. at 121 (describing a probationer's privacy interests as "significantly diminished"); *Bennett*, 200 P. 3d at 463 (stating that "although probationers' privacy rights are more limited than are the rights of free citizens, probationers do enjoy some expectation of privacy in their persons and property"); *People v. Hale*, 714 N.E.2d 861, 863 (N.Y. 1999) (concluding that "a probationer loses some privacy expectations and some of the protections of the Fourth Amendment, but not all of both"); *Murry*, 762 S.E.2d at 578 (recognizing that "probationers retain some expectation of privacy, albeit diminished").

Although warrantless, suspicionless searches of parolees pursuant to a condition of parole are permissible, probationers have a greater expectation of privacy than parolees. *See Samson*, 547 U.S. at 850; *Bennett*, 200 P.3d at 462. The Tennessee Supreme Court has in fact described parole as more closely akin to incarceration than it is to probation. *Turner*, 297 S.W.3d at 165. Moreover, the degree to which searches may impinge on probationers' expectations of privacy is "not unlimited." *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987).

Our state legislature has determined that certain offenders are eligible for probation or some other alternative sentence rather than imprisonment based upon the nature of the offenses, the sentences imposed, and the offenders' criminal histories. *See* T.C.A. § 40-35-102(5), (6)(A) (providing that a defendant who is sentenced as an especially mitigated or standard offender and who has committed a Class C, D, or E felony should be considered a favorable candidate for alternative sentence if certain conditions are met); *id.* § 40-35-303(a) (providing that a defendant is eligible for probation if the sentence imposed is ten years or less). Unlike parolees, probationers generally have been convicted of less serious felonies and have relatively short criminal histories. *Id.* § 40-35-102(5) (providing that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration"). As a result, probationers are deemed to have acted less harmfully than parolees or prison inmates.

The probation condition subjected Mrs. Hamm to searches of her person, property, residence, and vehicle at any time by any probation or law enforcement officer without a warrant and for both probation and investigative purposes. To adopt the State's argument that law enforcement may conduct warrantless searches pursuant to this condition at any time and without reasonable suspicion would, in reality, extinguish any Fourth Amendment rights that Mrs. Hamm has as a probationer.

The two primary goals of probation are "rehabilitation and protecting society from future criminal violations." *Knights*, 534 U.S. at 119. The State has a legitimate concern that a probationer is more likely to engage in illegal activities than an ordinary citizen. *See id.* at 121. The State also has an interest in ensuring that a petitioner will successfully complete the term of probation and be integrated back into society as a productive, law-abiding citizen. One of the purposes of sentencing is to impose punishment "to prevent crime and promote respect for the law by … [e]ncouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants." T.C.A. § 40-35-102(3)(C). To that end, probationers should be encouraged to obtain and

maintain employment, further their education, support their families, and maintain housing.

Allowing suspicionless searches of probationers and their property at any time could hamper the goals of rehabilitation. A warrantless, suspicionless search condition subjects a probationer to a search of his or her person and belongings at any time and any place, whether it is at the probationer's employment, school, or home or while in a public area such as a store or restaurant. The probation condition, therefore, could sanction intimidating and harassing searches that are unrelated to the probationer's rehabilitation or public safety, thus undermining the purpose of the probation conditions. While such intimidating and harassing searches might be challengeable in a motion to suppress if officers happen to discover evidence of illegal activity, a probationer who is following the law and the conditions of probation but nevertheless continues to be subject to intimidating and harassing searches has little recourse.

A suspicionless search of a probationer at her or her place of employment runs the risk of disrupting the business and could subject the employer and other employees to a search that would not otherwise be constitutionally permissible. As a result, an employer has less of an incentive to hire a probationer subject to this condition. Furthermore, a warrantless, suspicionless search of a probationer runs the risk of usurping the privacy rights of those who would otherwise be protected under the United States and Tennessee constitutions but who happen to work, socialize, or live with the probationer.

The impact of a warrantless search on the rights of both probationers and regular citizens is too great to authorize without requiring reasonable suspicion. Absent, at minimum, a reasonable suspicion requirement, a probation or law enforcement officer may search a probationer subject to a warrantless search condition at any time and place. It appears that this warrantless search condition applies to probationers convicted of either felonies or misdemeanors. As a result, in two years, hundreds of thousands of probationers scattered throughout the State of Tennessee will be subject to searches heretofore unheard of, and its negative impact could be immeasurable. Not only can the condition negatively affect a probationer's employment opportunities, it can also affect his or her relationship with family and friends. A probationer whose person or property is being searched may subject the persons and property of those surrounding the probationer to a search. For example, in the present case, the officers did not limit their search to those portions of the house over which Mrs. Hamm maintained authority or control. Rather, the officers searched every room in the house with the exception of a small girl's room and despite information that Mr. Clifford Hamm and his teenage son lived in and maintained personal property in the home.

While a search conducted pursuant to a warrantless search condition may be

unreasonable even absent a reasonable suspicion requirement if the search is based upon harassment or some other purpose that does not constitute a legitimate law enforcement purpose, the probationer only has a viable action of recourse if he or she is charged with a criminal offense as a result of evidence seized during the search. Under such circumstances, the probationer may seek to have the evidence seized during the search suppressed. However, if no incriminating evidence is discovered, the probationer does not have a viable recourse of action even if the probationer is subjected to multiple warrantless, suspicionless searches. A reasonable suspicion requirement recognizes that probationers have less privacy rights than regular citizens but protects probationers from multiple and continuing warrantless searches when there is no indication that the probationers are engaging in illegal activity.

While the privacy rights of petitioners are more limited than the rights of free citizens, probationers do have some expectation of privacy in their persons and property. "Law enforcement efforts must be reasonably calculated with reference to the probationers' privacy rights." *Bennett*, 200 P.3d at 463. I conclude that a reasonable suspicion standard properly recognizes the reduced privacy rights of probationers while balancing the State's goals of rehabilitation and protection of the public from any further illegal activity by the probationer. Reasonable suspicion is not an overly burdensome standard of proof. *See Griffin*, 483 U.S. at 879-80.

In the present case, the search of the Defendants' home was not supported by reasonable suspicion. Therefore, the search was not reasonable based on the totality of the circumstances, and the trial court properly granted the Defendants' motions to suppress on this basis.

**Consent**

I also believe that it is necessary to address the State's contention that Mrs. Hamm consented to the search of her home by agreeing to the warrantless search provision as a condition of probation. In making its argument, the State relies upon the order setting out the conditions of probation, which was signed by Mrs. Hamm, the probation officer, and the trial court. While the document signed by Mrs. Hamm listing the conditions of probation is entitled "Probation Order," it is a preprinted form prepared by the Field Services Division of the Tennessee Department of Correction that includes blanks in which information regarding Mrs. Hamm, her conviction, and her sentence were handwritten. The form also includes the signatures of Mrs. Hamm, the trial judge, and the probation officer as a "witness." The form was not signed by the prosecutor or Mrs. Hamm's attorney, and there is no indication that Mrs. Hamm was allowed to review the form with counsel before signing it or was otherwise informed that she was foregoing her Fourth Amendment rights as a condition of probation. Such a practice does not appear to be

uncommon. During the suppression hearing, the defense presented a preprinted form of community correction rules utilized by Weststate Corrections Network, a private company, which provides for warrantless searches and only requires the signature of the defendant.

In *State v. Davis*, this court recognized that "[a] probationer's waiver of his Fourth Amendment rights is no less voluntary than the waiver of rights by a defendant who pleads guilty to gain the benefit of a plea bargain." 191 S.W.3d 118, 122 (Tenn. Crim. App. 2006) (citing *Bordenkricher v. Hayes*, 434 U.S. 357, 360-64 (1978)). When a defendant seeks to waive his rights and enter a guilty plea, however, defense counsel and the trial court are required to take actions to ensure that the defendant's waiver is knowingly, intelligently, and voluntarily made. The defendant's counsel must advise the defendant of the rights that he or she is waiving by pleading guilty to ensure that the defendant understands his rights and the implications of the plea. There then must be an affirmative showing in the trial court that the defendant is knowingly and voluntarily entering the plea and was made aware of the significant consequences of the plea. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999); *State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977). The trial court must determine if the guilty plea is knowingly entered by questioning the defendant to ensure that the defendant understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Defense counsel must advise a "noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010). Likewise, a trial court must advise a defendant who is entering a plea of guilty or nolo contendere that the plea may affect the defendant's immigration or naturalization status, and the trial court must determine that counsel has advised the defendant of the "immigration consequences of a plea." Tenn. R. Crim. P. 11(b)(J). A trial court also must advise a defendant, who is entering a plea of guilty or nolo contendere to an offense for which the defendant will receive a sentence of community supervision for life, that the defendant will receive the additional sentence, and the trial court must determine that counsel has advised the defendant of the community supervision for life sentence and its consequences. Tenn. R. Crim. P. 11(b)(K).

However, these precautions are not taken when a probationer signs a form agreeing to warrantless searches as a condition of probation and, thus, waiving one of the most basic constitutional rights. Rather, a probationer is required to sign a preprinted form prepared by the probation office generally after the probationer has been sentenced to probation and without the advice of counsel or any questioning by the trial court to ensure that the probationer understands the consequences of the condition. The consequences of a probationer waiving his or her Fourth Amendment rights and being subjected to a warrantless search condition are too great to base its validity on a preprinted form prepared

by either a State-run or private probation office and signed by a probationer with little bargaining power and without the advice of counsel or any actions by the trial court to ensure that the waiver is knowing, voluntary, and intelligent. A person's Fourth Amendment rights are of such importance that any waiver of those rights as a condition of probation should be made as part of the plea colloquy rather than in a backroom of a courthouse without the presence of counsel. If a person's Fourth Amendment rights can be waived with such little formality as evidenced in this case, why cannot the right to an attorney, notice, and a hearing also be waived as it relates to future probation violations or other prosecutions?

Another troubling aspect made apparent by this particular case is that the "consent" to search as alleged by the State was given to the probation office or to a probation officer in furtherance of the mission of rehabilitation. Traditionally, probation officers are not trained in crime detection, investigation, or the constitutional requirements that protect a citizen's full panoply of rights. Moreover, as this case illustrates, this "consent" can be used by any law enforcement agency in this state, other jurisdictions, or the federal government to justify a search of any area where the probationer might be located regardless of whether it furthers the goal of rehabilitation of the probationer subject to the warrantless search condition. *See Murry v. Commonwealth*, 762 S.E.2d 573, 580 (Va. 2014) ("Law enforcement officers, however, do not have the same responsibility as probation officers with respect to rehabilitating probationers."). This "consent," when taken to its logical conclusion and without a minimum standard of reasonable suspicion, would allow federal law enforcement officers to compare their federal gun registration database against the records of all known felons who are on probation and search for guns in homes where the probationers reside and vehicles in which the probationers have an ownership interest notwithstanding the rights of other citizens. This concern is why court action is necessary in limiting the substantial authority granted to law enforcement through the practice of a warrantless search condition.

While the risk of recidivism has been utilized as a justification for the warrantless search condition, this risk of recidivism continues even after the probationer completes his or her term of probation. A defendant who is convicted of a criminal offense committed after the defendant has completed a term of probation is still considered a recidivist; yet, the defendant retains his or her Fourth Amendment rights upon completion of probation.

Even if a probationer may voluntarily consent to suspicionless, warrantless searches as a condition of probation and thus waive his or her Fourth Amendment rights, the State has failed to present any evidence surrounding the circumstances leading to Mrs. Hamm signing the order that included the warrantless search condition. "The consent exception to the warrant requirement applies when a person voluntarily consents to a search." *State v. Reynolds*, 504 S.W.3d 283, 306 (Tenn. 2015) (citing *Schneckloth v. Bustamonte*, 412

U.S. 218, 219 (1973); *State v. Berrios*, 235 S.W.3d 99, 109 (Tenn. 2007)).   The State bears the burden of establishing that "'consent was, in fact, freely and voluntarily given.'" *Reynolds*, 504 S.W.3d at 306 (quoting *Schneckloth*, 412 U.S. at 222).   "'The pertinent question is … whether the [individual's] act of consenting is the product of an essentially free and unconstrained choice.   If the [individual's] will was overborne and his or her capacity for self-determination critically impaired, due process is offended.'"   *Id.* at 306-07 (quoting *State v. Cox*, 171 S.W.3d 174, 185 (Tenn. 2005)).   The issue of whether a person voluntarily consented to a search is determined based upon the totality of the circumstances in each case.   *Id.* at 307.

Although the prosecutor referenced a guilty plea during the suppression hearing, no evidence was presented during the hearing establishing the terms of any plea agreement that resulted in the convictions for which Mrs. Hamm was on probation.   It is unknown whether probation was agreed to by the parties under the terms of the plea agreement or whether probation was ordered by the trial court following a sentencing hearing.   No evidence was presented to establish whether the warrantless search condition was ordered by the trial court as a condition of Mrs. Hamm's probation or whether the condition was imposed by the office supervising Mrs. Hamm's probation.   No evidence was presented regarding the time and place where Mrs. Hamm signed to order that included the warrantless search condition, whether her counsel was present, whether the condition was reviewed with Mrs. Hamm before she signed it, and whether she understood the implications of the warrantless search condition.   Finally, no proof was presented regarding Mrs. Hamm's "age, education, intelligence, knowledge, maturity, sophistication, [and] experience," all of which are relevant circumstances.   *Cox*, 171 S.W.3d at 185.   Most of this evidence could have been presented through Mrs. Hamm's probation officer, who testified at trial, but that the State failed to question the probation officer about any of the circumstances under which Mrs. Hamm signed the probation order.   Thus, the State failed to meet its burden of establishing that Mrs. Hamm voluntarily consented to warrantless searches by signing the order that included the condition.

In conclusion, I concur with the majority opinion affirming the trial court's granting of the Defendants' motion to suppress evidence seized during the search of their home.   At a minimum, reasonable suspicion should be required for a government agency to conduct a warrantless search of a probationer who is subject to a warrantless search condition of his or her probation.   Moreover, the trial court should inform a defendant of the warrantless search condition during any plea colloquy and any knowing and intelligent waiver of a defendant's Fourth Amendment rights as a condition of probation should be affirmed in open court.   Finally, limits should be placed on what agencies and jurisdictions may utilize the warrantless search condition to conduct a warrantless search of the probationer based on reasonable suspicion.

_____
JOHN EVERETT WILLIAMS, JUDGE