FILED

08/30/2018

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 1, 2018 Session

## STATE OF TENNESSEE v. DARRIN KEITH WARD, JR.

**Appeal from the Circuit Court for Dyer County**
**No. 14-CR-369, 15-CR-273      R. Lee Moore, Jr., Judge**

_____

### No. W2017-01516-CCA-R3-CD
_____

The Defendant, Darrin Keith Ward, Jr., appeals the trial court's revocation of his community corrections sentence, arguing that the trial court abused its discretion by relying on stale information and insufficient evidence in deciding to revoke his sentence. After review, we affirm the revocation of the alternative sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

James E. Lanier, District Public Defender; and H. Tod Taylor, Assistant Public Defender, for the appellant, Darrin Keith Ward, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Lance E. Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

In December 2015, the Defendant pled guilty to possession of marijuana in the amount greater than 0.5 ounces with the intent to sell or deliver, and separately pled guilty to driving under the influence of marijuana, felony evading arrest, and simple possession of cocaine. He was sentenced to a total effective term of four years as a Range I, standard offender, with six months to be served in the Department of Correction and three and a half years to be served on community corrections, with supervision by the

Westate Corrections Network. As part of his community corrections sentence, the Defendant signed a Behavioral Contract Agreement, which included provisions requiring the Defendant to obey the laws of Tennessee and allowing law enforcement officers to conduct a search of both him and his residence to control contraband or locate stolen property. On June 27, 2017, the trial court revoked the Defendant's community corrections sentence, finding that he had violated its terms by possessing marijuana, cocaine, and a firearm. The court imposed a total effective term of four years of confinement with 413 days of jail credit. On appeal, the Defendant argues that law enforcement based their decision to search his residence on stale information, violating his Fourth Amendment rights and equating harassment. He further argues that the trial court based its revocation of his alternative sentence on such evidence, and therefore abused its discretion in revoking his community corrections sentence.

The essential facts leading up to the Defendant's alternative sentencing being revoked by the trial court are not in dispute. On December 5, 2015, the Defendant pled guilty to possession of marijuana in an amount greater than 0.5 ounces with the intent to sell or deliver, and separately pled guilty to driving under the influence or marijuana, felony evading arrest, and simple possession of cocaine. While the Defendant was on probation under the supervision of Westate Corrections Network, the Dyersburg Police Department received information regarding the Defendant from two separate confidential informants that they believed to be reliable.

At the revocation hearing on June 6, 2017, Officer Mason McDowell of the Dyersburg Police Department testified that one confidential informant advised Officer McDowell that he had purchased cocaine from the Defendant within the previous six months, and had seen the Defendant in possession of "felony amounts" of both marijuana and cocaine within the previous sixty days. The other confidential informant gave Officer McDowell a more general statement against the Defendant, and both informants told Officer McDowell that the Defendant resided at 1547 Fair Street in Dyersburg.

Upon receiving this information, Officer McDowell testified that he conducted an investigation into the Defendant, in which he learned that the Defendant was then on community corrections with supervision by the Westate Corrections Network. Officer McDowell contacted Westate and requested a copy of the Behavioral Contract Agreement, which included a provision allowing officers to search a defendant's residence for contraband. He also confirmed with Westate that the Defendant resided at 1547 Fair Street, the same address that the confidential informants had provided. Officer McDowell testified that the Dyersburg Police Department then began surveillance of the Defendant, and he personally observed several of the Defendant's vehicles at the residence and saw him going to and from the residence on "almost a daily basis." Although Sandra Foster was the listed tenant of 1547 Fair Street on the lease agreements,

Officer McDowell testified on cross-examination that it was the officers' understanding that the Defendant had lived with Ms. Foster "as a family unit" at several different residences.

Officer McDowell further testified that, based on the statements from the confidential informants and their own investigation, the Dyersburg Police Department approached the Defendant outside of 1547 Fair Street on January 4, 2017. Officer McDowell, along with Officers Sterling Wright and Chris Purcell of the Dyersburg Police Department, apprehended the Defendant outside of the residence after he tripped and fell while attempting to flee on foot. Officer McDowell testified that the Defendant stated that he "could not go to jail" and had a lot of "fed time stuff" in his residence when officers informed him of their intent to search his residence.

During the search of 1547 Fair Street, the Defendant aided the three officers in locating contraband, even "pointing out items" and "turning things over" that were otherwise not in plain view to the officers. The officers discovered a Llama .45 caliber handgun and $6,065 in cash, as well as 13.76 pounds of marijuana and 477.11 grams of cocaine packaged in "one or two-ounce" bundles, as was later determined by the Tennessee Bureau of Investigation. The Dyersburg Police Department arrested the Defendant on February 16, 2017, and charged him with possession of a weapon during a felony, possession of a schedule II controlled substance, and possession of a schedule VI controlled substance.

At the revocation hearing, Chuck Wade, the Defendant's case officer, testified that the Defendant signed the Behavioral Contract Agreement and retained a copy of it upon beginning his community corrections sentence. Mr. Wade further stated that he filed a report of the Defendant's community corrections violation with the trial court on March 1, 2017, after learning of the three new charges filed against the Defendant by the Dyersburg Police Department. Specifically, the three new charges violated rules one and eight of the Defendant's Behavioral Contract Agreement, which disallowed any violations of Tennessee law and prohibited the possession of a firearm, respectively.

Following the close of all proof, the trial court revoked the Defendant's community corrections sentence in full and reinstated his original four-year sentence with 413 days of credit, to be served in the Department of Correction.

## ANALYSIS

On appeal, the Defendant argues that the information the Dyersburg Police Department relied on in deciding to search his residence was stale, and officers therefore lacked reasonable suspicion to search and subsequently arrest him. Further, the Defendant argues that the search was so unreasonable based on the totality of the circumstances that it amounted to harassment, and as such should have been excluded from the trial court's consideration in deciding to revoke his community corrections sentence. The State responds that probationers[1] have limited Fourth Amendment rights, and the police officers had a sufficient basis for searching the Defendant. Moreover, even if the officers did not have a sufficient basis, the State argues that they had a good faith basis to believe the Defendant was again engaging in criminal activity.

A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by a preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311. The revocation of probation lies within the sound discretion of the trial court. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App.1980)). The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment. Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)). We review this issue, therefore, for an abuse of discretion.

The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. The Tennessee Constitution similarly states that "the people shall be secure in their persons . . . from unreasonable searches and seizures[.]" Tenn. Const. art. I, § 7. The search and seizure provisions of the United States Constitution and the Tennessee Constitution are "'identical in intent and purpose.'" State v. Christensen, 517 S.W.3d 60, 68 (Tenn. 2017) (quoting Sneed v. State, 423 S.W.2d 857, 860 (1968)). In reviewing the permissibility of such searches and seizures, courts should balance the individual's privacy interest against

---

[1] Although we are aware that probation is not wholly synonymous to community corrections, we are employing the same terminology used by the trial court. Further, our supreme court recently commented on the similarities among supervised release sentences. See infra note 2.

- 4 -

the governmental interest in conducting the searches.  State v. Turner, 297 S.W.3d 155, 160 (Tenn. 2009).

Despite the general protection from unreasonable searches and seizures, such protection is lessened when the person being searched was previously convicted of a crime and is on probation or parole.  Id.  A probationary status gives way to a lesser expectation of privacy and therefore weakened protections, especially where the defendant has consented to such searches as a condition of his probation.  Id. at 161.  The United States Supreme Court has held that the combination of reasonable suspicion with consenting to searches as a condition of probation is enough to make a search reasonable under the Fourth Amendment.  See United States v. Knights, 534 U.S. 112, 122 (2001).  This court has recognized such a standard applied specifically to searches pursuant to a community corrections agreement.[2]  See State v. Gary Shane Howell, No. M2007-00987-CCA-R3-CD, 2008 WL 732128, at *8 (Tenn. Crim. App. Mar. 18, 2008).  However, our supreme court has recognized that it is unclear whether the search of a probationer requires reasonable suspicion or a lesser standard.  Turner, 297 S.W.3d at 162 n.4.  "[T]he Court left open the question 'whether. . . a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment.'"  Id. at 162.  The court further stated, "Our resolution of the instant case also does not require us to resolve this issue as to probationers."  Id. at 162 n.4.

Reasonable suspicion is a lesser standard than probable cause, and only requires specific, articulable facts, sufficient to support the finding that a criminal offense has been, or is about to be, committed.  See Terry v. Ohio, 392 U.S. 1, 20-21, 88 S. Ct. 1868, 1879-80 (1968).  In establishing reasonable suspicion, courts should consider whether the facts relied upon by the State are stale and thus unreliable.  To determine staleness, courts should consider "whether the criminal activity under investigation was an isolated event or of a protracted and continuous nature[.]"  State v. Meeks, 876 S.W.2d 121, 124 (Tenn. 1993).  When the criminal activity is continuous, this court has held that information

---

[2]  Our supreme court recently declined to determine whether the conditions of community corrections supported a suspicionless, warrantless search, though the court found that conditions of parole supported such a search.  See State v. Janet Michelle Stanfield, Tony Alan Winsett, and Justin Bradley Stanfield, No. W2015-02503-SC-R11-CD, 2018 WL 3762174, at *16-17 n.11 (Tenn. Aug. 7, 2018).  It is thus unclear whether reasonable suspicion is required in order to conduct the warrantless search of a defendant on community corrections.  The court did note, however, that although "community corrections" and "probation" are not synonymous, where statuses involve "supervised release into the community as opposed to incarceration," references to cases involving probation may be instructive with respect to other similar statuses.  Id. at *16 n.9.

regarding the activity "does not become stale with the passage of time." State v. Thomas, 818 S.W.2d 350, 357 (Tenn. Crim. App. 1991). Further, even when law enforcement does rely upon stale information, the evidence obtained from that information is not suppressed by the exclusionary rule in a probation revocation hearing, unless such evidence is obtained through police harassment or in a particularly offensive manner. See State v. Hayes, 190 S.W.3d 665, 669-70 (Tenn. Crim. App. 2005).

As we have set out, Chuck Wade, the Defendant's case officer, testified at the evidentiary hearing that the Defendant signed and retained a copy of the Behavioral Contract Agreement on January 22, 2016, which included a provision allowing law enforcement officers to conduct a search of his residence in order to control contraband and provided that he would abide by all laws of the State of Tennessee. Following the evidentiary hearing, the trial court found that the Defendant was a probationer at the time of the search and he understood the provisions in the Behavioral Contract Agreement, which provided for a search without a warrant. The court also found that officers were aware of the Defendant's prior criminal record and probationary status. Accordingly, the court concluded that a search warrant was not needed to search the Defendant's residence after officers received reliable information that he was in possession of controlled substances and conducted an investigation into that information.

The Defendant argues that the Dyersburg Police Department relied on stale information when deciding whether to search his residence, based on Officer McDowell's testimony that the confidential informant told him that the Defendant was in possession of controlled substances within the last sixty days. Further, the Defendant argues that based on the passage of time before the confidential informant relayed the information to law enforcement, the Dyersburg Police Department lacked reasonable suspicion and would have been unable to obtain a search warrant based on such information, amounting to law enforcement harassing the Defendant and obtaining the evidence in a particularly offensive way. However, the Defendant disregards Chuck Wade's accredited testimony that the Defendant signed and retained a copy of the Behavioral Contract Agreement upon beginning his community corrections sentence. The agreement states in relevant part:

> I, the undersigned, have read the following Behavioral Contract Agreement and agree to all the terms set out herein. I have signed of my own free will and have not been threatened or coerced, in any way, to sign this agreement.
>
> That I have been provided a copy of the attached rules and regulations of my community corrections program including the Behavioral Contract Agreement and that I agree to abide by said rules and regulations and terms of contract.

. . .

1. Offenders will obey the laws of the State of Tennessee, United States, or any other state in which he/she may be, as well as any municipal ordinances. Offenders will report all violations of the law to the Case Officer within 24 hours. (This includes traffic violations). Failure to report will be a serious infraction of the rules.

. . .

8. Offenders will not associate with known felons or any person who is known to be involved in criminal activities, nor will offenders be allowed to own or possess any type of firearm or deadly weapon for any reasons.

. . .

11. Offenders will allow the Case Officer to visit his/her home, employment site, or elsewhere at any time during the day or night and shall carry out all instructions given by the case officer, whether oral or in writing. Offenders will allow law enforcement to conduct a search of offender and all areas of the house upon request to control contraband or locate missing or stolen property.

Based on the Defendant's agreeing to abide by the above rules, the Dyersburg Police Department was not required to establish probable cause and obtain a search warrant before searching the Defendant's residence. See Knights, 534 U.S. at 121. As a probationer, the Defendant was entitled only to limited Fourth Amendment protections. The Dyersburg Police Department received information from two separate confidential informants that they considered reliable. Officers then surveilled the Defendant and verified the terms of his community corrections sentence with Westate before searching the Defendant's residence, knowing that he had previously been arrested for possessing the same controlled substances. The Defendant even aided the officers in searching his residence, moving evidence into plain view that the officers would have otherwise been unable to see. Though the Defendant relies on State v. Janet Michelle Stanfield, Tony Alan Winsett, and Justin Bradley Stanfield, No. W2015-02503-CCA-R3-CD, 2017 WL 1205952 (Tenn. Crim. App. Mar. 31, 2017), rev'd, 2018 WL 3762174, (Tenn. Aug. 7, 2018), for the assertion that law enforcement officers need reasonable suspicion to search a parolee or probationer, our supreme court recently overturned Stanfield, holding instead that a defendant's status as a parolee, along with warrantless searches serving as part of his conditions of parole, was sufficient to satisfy constitutional reasonableness under a totality of the circumstances test where law enforcement was aware of such status. Stanfield, 2018 WL 3762174, at *12. The court declined to comment specifically on community corrections conditions, but did note a similarity among supervised release statuses. It is therefore unclear whether reasonable suspicion, or a lesser standard, is required for law enforcement officers to search a defendant on a community corrections sentence.

Regardless of whether reasonable suspicion was required before conducting the search, the Defendant fails to recognize that the Dyersburg Police Department had reasonable suspicion that the Defendant was again in possession of controlled substances at the time of the search. As we have set out, the officers received information from confidential informants that they considered reliable. The officers were able to verify parts of the information, including the Defendant's address, and conducted surveillance of the Defendant before beginning the search. Officers were aware of the Defendant's probationer status and his previous convictions involving possession of the same controlled substances referenced by the confidential informants. Though the Defendant argues that the information was over sixty days old and per se stale, our courts have found that information is not stale where the criminal activity is ongoing. See Thomas, 818 S.W.2d at 357. The Dyersburg Police Department knew of the Defendant's previous convictions of possessing cocaine and driving under the influence of marijuana, and the information from the confidential informants suggested that the Defendant was continuing the same criminal activity. Reasonable suspicion only requires specific, articulable facts, which Officer McDowell was able to provide in his testimony at the evidentiary hearing. See Terry, 392 U.S at 20-21.

Finally, the Defendant argues that the evidence obtained from the search should have been excluded from the trial court's consideration in deciding whether to revoke his probation, based on the unreasonableness of the search and harassment of the Defendant. However, there is no evidence in the record to support the assertion of harassment or unreasonableness by the Dyersburg Police Department. This was the first search that the Defendant was subjected to, even though he had been on community corrections for approximately a year at the time of the search. Officers were acting on reliable information from confidential informants, and conducted the search in the middle of the day after verifying that the Defendant was home. The Defendant's argument fails to recognize that without harassment by the Dyersburg Police Department, the exclusionary rule does not apply in revocation hearings. Hayes, 190 S.W.3d at 669-71. Therefore, even if police officers had no sufficient basis to justify the search of the Defendant's residence, the evidence obtained from the search, namely the controlled substances and firearm, would still have been appropriately considered by the trial court in deciding to revoke the Defendant's probation.

In revoking the Defendant's alternative sentencing, the trial court found as follows:

> They have the right to search when you're a probationer. With the information they had, they certainly could approach you about that. [H]aving the possession of cocaine, and especially that amount, and the marijuana, is certainly a violation of your probation. [I]t doesn't matter

whether that's your cocaine or your marijuana or the girl that you're living with. You're not supposed to be around anybody that is violating the law. Your probation is revoked in these two cases and you'll be remanded to the custody of the TDOC to serve the remainder of your sentence.

The Defendant was found in possession of marijuana, cocaine, and a firearm, which was a violation of his probation. Regardless of whether the Dyersburg Police Department relied on stale information in deciding to search his residence, the Defendant knew that his Behavioral Contract Agreement required him to abide by the laws of Tennessee and subjected him to searches by law enforcement in the course of controlling contraband. The exclusionary rule does not apply in probation revocation hearings without a finding of harassment, even if law enforcement has violated a defendant's Fourth Amendment rights in searching his residence. See Hayes, 190 S.W.3d at 670. Therefore, the trial court clearly acted within its discretion in finding that the Defendant had violated the terms of his probation, and revoking his community corrections sentence.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court revoking the Defendant's community corrections sentence and reinstating his original four-year sentence, to be served in the Department of Correction.

_____
ALAN E. GLENN, JUDGE